**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

**Case No. --**

| | |
|---|---|
| **ANDREW WARREN,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **THE CENTRAL INTELLIGENCE** | ) |
| **AGENCY, and LEON E. PANETTA,** | ) |
| | ) |
| **Defendants.** | ) |
| ——————————————————— | ) |

**<u>COMPLAINT</u>**

Plaintiff Andrew Warren ("Mr. Warren" or "Plaintiff"), by and through his undersigned counsel, hereby files this action against Defendants The Central Intelligence Agency ("Agency") and Leon E. Panetta ("Director Panetta") (collectively, "Defendants"). In furtherance of the same, Plaintiff respectfully alleges as follows:

**<u>INTRODUCTION</u>**

1.     This case involves several breaches by Defendants against Mr. Warren. Specifically, this matter involves Defendants' mistreatment of a senior ranking agent suffering from Post-Traumatic Stress Disorder ("PTSD"). In addition, Mr. Warren's claims arise from Defendants' unauthorized disclosure of Mr. Warren's identity to the public, causing Mr. Warren to receive numerous threats of physical injury.

**<u>JURISDICTION AND VENUE</u>**

2.     This Court has jurisdiction over this matter pursuant to Title 28 U.S.C. § 1331, and 5 U.S.C. §552a.

3.      Venue is proper in the District of Columbia pursuant to Title 28 U.S.C. §

1391(e) in that the Agency is an agency of the United States and Title 28 U.S.C.

§1391(b)(2) because the acts of Defendants giving rise to Mr. Warren's claims occurred

in the District of Columbia.

## PARTIES

4.      Mr. Warren is a United States citizen, and a former senior ranking official

with the Agency.  Mr. Warren served the Agency honorably for over a decade, earning

over 10 Agency Exceptional Performance Awards.

5.      The Agency is an external intelligence service of the United States

government headquartered in Langley, Virginia, tasked with gathering, processing and

analyzing national security information from around the world, primarily through the use

of human intelligence.

6.      Director Panetta was at all relevant times, the Director of the Agency.

Upon information and belief, Director Panetta improperly confirmed Mr. Warren's

identity and affiliation with the Agency during his Confirmation Hearing in front of the

U.S. Senate Select Committee on Intelligence in Washington, D.C.

## FACTS

7.      Mr. Warren was, until his termination in 2009, a senior ranking official

within the Agency.  During his service with the Agency, Mr. Warren earned over 10

Agency Exceptional Performance Awards as well as many other awards from the

Department of Defense, Federal Bureau of Investigation, Department of Justice, and State

Department.

8.      During Mr. Warren's career, he consistently received excellent evaluations based upon his highly effective operations.   Mr. Warren consistently volunteered for some of the Agency's most dangerous assignments.

9.      As a direct result of multiple assignments to some of the most dangerous locations and operations in the world, Mr. Warren developed PTSD.  Mr. Warren's PTSD went untreated at the Agency, and as a result, Mr. Warren engaged in conduct that led to his termination from the Agency, and ultimately to his incarceration.

10.      As part of his criminal trial, Mr. Warren submitted to Judge Ellen Huvelle of the U.S. District Court for the District of Columbia a diagnosis of Mr. Warren's PTSD from forensic psychiatrist Dr. Neil Blumberg ("Dr. Blumberg").  According to Dr. Blumberg's diagnosis, Mr. Warren's PTSD developed as early as 2001, clearly during his tenure with the Agency, and long before the acts that lead to Mr. Warren's incarceration.

11.      In fact, Mr. Warren had several medical exams while with the Agency, prior to being deployed to any region overseas.  At each of the exams, Mr. Warren informed the examining physician that he was suffering from symptoms indicative of PTSD.  However, not one physician with the Agency ever followed-up on Mr. Warren's concerns or suggested that he was suffering from PTSD.  As a result, Mr. Warren was forced to endure his symptoms while being stationed in dangerous locations around the world, including areas with active combat.

12.      Ultimately, Mr. Warren's PTSD continues to this day.  Specifically, Mr. Warren continues to suffer from symptoms of PTSD, including, but not limited to flashbacks, severe claustrophobia, inability to sleep, hyper-vigilence, racing thoughts/inability to concentrate or focus, and major depressive disorder.  To date, Mr.

Warren is unable to work a normal job due to the effects of his PTSD, which went undiagnosed while Mr. Warren was serving his country as an agent of the Agency.

13.     In addition, Defendants continued to put Mr. Warren in harms way through the statements of Director Panetta.  Under the direction of the Director of National Intelligence, pursuant to section 102A(i) of the National Security Act of 1947, as amended, 50 U.S.C. § 403-1(i), and in accordance with section 6 of the Central Intelligence Agency Act of 1949, as amended, 50 U.S.C. § 403g, and sections 1.3(a)(5) and 1.5(h) of Executive Order 12333, as amended, the Director of the Agency is responsible for protecting Agency intelligence sources and methods from unauthorized disclosure.

14.     Federal officials handling personal information are bound by the Privacy Act of 1974 not to disclose any personal information and to take certain precautions to keep personal information confidential.  During Director Panetta's open confirmation hearing before the Senate Intelligence Committee, and prior to any charges being filed against Mr. Warren, Director Panetta failed to protect Mr. Warren's identity and confirmed his affiliation with the Agency in direct violation of the National Security Act of 1947, the Central Intelligence Agency Act of 1949, and the Privacy Act of 1974.

15.     Subsequent to Director Panetta's disclosure, Mr. Warren began to face threats of physical injury.  Prior to Director Panetta's statements, Mr. Warren's affiliation with the Agency had not been confirmed.

16.     As a result of the symptoms of Mr. Warren's PTSD and Director Panetta's disclosure, Mr. Warren engaged in conduct which lead to an indictment on a weapons

and controlled substance charge for which Mr. Warren remained detained through his sentencing in or around March 2011.

17.     Mr. Warren continues to fear for his safety since Director Panetta confirmed his affiliation with the Agency.

18.     In addition, Mr. Warren is forced to live with the effects of PTSD, as well as continued personal threats against his life because of his work with the Agency and the Agency's failure to protect Mr. Warren's identity and provide him with timely treatment for his PTSD.  Timely treatment would have likely prevented Mr. Warren's subsequent legal issues and fall from grace.

## CAUSES OF ACTION

### COUNT 1 – BREACH OF FIDUCIARY DUTY

19.     Plaintiff repeats and re-alleges the allegations contained in paragraphs 1-18 as if fully set forth in this Count.

20.     The Director of the Agency has a duty to protect "intelligence sources and methods" from disclosure.

21.     By engaging in the conduct described herein, Defendants failed to reasonably safeguard Mr. Warren's identity.  As such, Defendants significantly and substantially breached their duties to Mr. Warren.

22.     As a direct and proximate result of these breaches, Defendants have caused Mr. Warren to suffer damages.

### COUNT 2 – VIOLATION OF PRIVACY ACT

23.     Plaintiff repeats and re-alleges the allegations contained in paragraphs 1-22 as if fully set forth in this Count.

24.     By engaging in the acts described herein, Defendants wrongfully disclosed the identity of an undercover agent in violation of 5 U.S.C. §522a(g)(1)(D).

25.     As a direct and proximate result of Defendants' actions, Mr. Warren has suffered damages.

## COUNT 3 – PUBLIC DISCLOSURE OF PRIVATE FACTS

26.     Plaintiff repeats and re-alleges the allegations contained in paragraphs 1-25 as if fully set forth in this Count.

27.     By engaging in the acts described herein, Defendants caused widespread publication of a private fact (namely the identity of Mr. Warren, a covert agent of the CIA) in a manner that would be deemed outrageous and highly offensive to a reasonable person of ordinary sensibilities.

28.     The public had no legitimate concern in learning Mr. Warren's identity as a classified agent of the CIA.

29.     Mr. Warren was injured as a direct and proximate result of Defendants' conduct as described herein.

30.     Defendants acted outside of the scope of their employment as a result of their conduct as described herein.

31.     Defendants' actions and/or omissions constituted an invasion of Mr. Warren's privacy.

## COUNT 4 – BREACH OF DUTY OF CARE

32.     Plaintiff repeats and re-alleges the allegations contained in paragraphs 1-31 as if fully set forth in this Count.

33.     As provided by the Central Intelligence Agency Act of 1949, the Agency provided Mr. Warren with physical examinations prior to his deployment to any overseas location in connection with Mr. Warren's work as an undercover agent.

34.     The Agency's physicians owed Mr. Warren a duty of care and treatment with that degree of skill, care, and diligence as possessed by or expected of a reasonably competent physician under the same or similar circumstances.

35.     However, the Agency's physicians ignored Mr. Warren's symptoms and failed to properly diagnose Mr. Warren with PTSD during his tenure with the Agency.

36.     By engaging in the conduct described herein, such as failing to properly analyze Mr. Warren's symptoms and diagnose Mr. Warren's PTSD, the Agency significantly and substantially breached its duties to Mr. Warren.

37.     As a direct and proximate result of these breaches, the Agency has caused Mr. Warren to suffer damages.

## <u>COUNT 5 – VIOLATION OF ADMINISTRATIVE PROCEDURE ACT</u>

38.     Plaintiff repeats and re-alleges the allegations contained in paragraphs 1-37 as if fully set forth in this Count.

39.     By engaging in conduct set forth herein, including wrongfully confirming Mr. Warren's identity and affiliation with the Agency, and failing to properly diagnose Mr. Warren's PTSD, Defendants have violated 5 U.S.C. §§706(1) & 2(A)-(D).

40.     As a direct and proximate result of these breaches, Defendants have caused Mr. Warren to suffer damages.

41.     Mr. Warren has no internal administrative remedy at the Agency to address the complained of acts and omissions.

7

## DEMAND FOR TRIAL BY JURY

Plaintiff respectfully requests that this matter is heard before a jury.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment in favor of Plaintiff and against Defendants:

a.    For actual damages in an amount to be proven at trial but in no event less than $4,000,000.00;

b.    For pre-judgment interest;

c.    For post-judgment interest; and

d.    For such other relief as this Court may deem just and proper.

**DATED:**    September 9, 2015
             Coral Gables, Florida

                    Respectfully Submitted,

                    **HUNTER TAUBMAN FISCHER LLC**


                    */s/ Mark David Hunter*
                    Mark David Hunter, Esquire
                    D.C. Bar No. 974569
                    Jenny Johnson-Sardella, Esquire
                    D.C. Bar No. 998245
                    255 University Drive
                    Coral Gables, Florida 33134
                    Telephone:    (305) 629-8816
                    Facsimile:    (305) 629-8877
                    E-Mail:       mhunter@htflawyers.com
                                  jsardella@htflawyers.com

8